UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JANET PELTONOVICH,   )
           )
    Plaintiff,   )
   v.      )    CIVIL ACTION
           )    NO. 13-11246-JGD
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security )
Administration,     )
           )
    Defendant.   )

## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS REGARDING DENIAL OF
## SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

September 19, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiff Janet Peltonovich ("Peltonovich") has brought this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and

1383(c)(3), in order to challenge the final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying her claim for Social Security

Disability Insurance ("SSDI") benefits.  The matter is before the court on the plaintiff's

"Motion to Reverse the Decision of the Commissioner of Social Security" (Docket No.

13), by which the plaintiff is seeking an order reversing the Commissioner's decision, and

remanding the matter back to the Social Security Administration for the payment of SSDI

benefits.  It is also before the court on the "Defendant's Motion for Order Affirming the

Decision of the Commissioner" (Docket No. 23), by which the Commissioner is seeking an order upholding her decision to deny Peltonovich's claim. The fundamental issue raised by the parties' motions is whether the Administrative Law Judge ("ALJ"), in reaching her conclusion that the plaintiff was not disabled, erred by giving little weight to the opinions of Peltonovich's treating physicians regarding the severity and limiting effects of the plaintiff's upper extremity impairments, and affording substantial weight to the opinion of a State agency physician, John Jao, M.D., who determined that Peltonovich had the residual functional capacity ("RFC") to perform a limited range of light work. The plaintiff contends that the ALJ should not have credited Dr. Jao's opinion because he specializes in "special senses" rather than in the field of orthopedic medicine, and because he based his assessment on a partial review of the administrative record. Instead, Peltonovich asserts that the ALJ should have deferred to the assessments of her treating hand surgeon, Jesse B. Jupiter, M.D., and her primary care physician, R. Christopher Herron, M.D., both of whom stated that Peltonovich was disabled and incapable of engaging in substantial gainful employment.

For all the reasons detailed herein, this court finds that the ALJ's decision to accept Dr. Jao's opinion over the opinions of Drs. Jupiter and Herron was appropriate and supported by substantial evidence. Accordingly, the plaintiff's motion to reverse and remand the matter for an award of benefits is DENIED, and the defendant's motion to affirm the Commissioner's decision is ALLOWED.

## II.  **STATEMENT OF FACTS**[1]

Peltonovich was born on July 14, 1960, and was 51 years old at the time of her hearing before the ALJ.  (Tr. 15, 186)  She has a high school diploma and completed one year of college.  (Tr. 16, 199).  Peltonovich began working full time as a production associate for Lucent Technologies in March 1980.  (Tr. 19-20, 199).  In 1991, she underwent carpal tunnel surgery on her right wrist, and was placed on medical restriction, which was aimed at allowing her to avoid repetitive motion with either of her hands.  (Tr. 18, 25, 201-02).  The plaintiff continued to work full time at Lucent, pursuant to her restricted status, until she was laid off in May 2002.  (Tr. 18-19).

After leaving Lucent, Peltonovich obtained part-time work as a cashier in a card store.  (Tr. 21, 199).  She later worked part-time as a cashier in a pharmacy, and for one day as a bagger/cashier in a grocery store.  (Tr. 22, 199).  However, Peltonovich claims that she was unable to perform her job duties, or maintain any of those positions for more than a brief period of time, due to pain in her wrists, elbows, forearms and neck.  (See Tr. 21-24).  She further claims that the chronic pain she experiences as a result of carpal tunnel syndrome in both wrists, ulnar tunnel syndrome and tendinitis in both elbows, and costochondritis, prevents her from maintaining any type of gainful employment.  (Tr. 23-24; see also Tr. 201-02).

### **Procedural History**

---

[1]  References to pages in the transcript of  the record proceedings shall be cited as "Tr. __."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 72.

Peltonovich filed an application for SSDI benefits on December 20, 2010, claiming that she had been unable to work since May 30, 2002 due to symptoms stemming from bilateral carpal tunnel syndrome, bilateral ulnar tunnel syndrome, tendinitis, and sciatica. (Tr. 87, 186, 198). In order to qualify for SSDI benefits, an individual must become disabled during the period under which he or she is insured by the program. See 20 C.F.R. § 404.131. Because Peltonovich was last insured on March 31, 2008, she had to establish that she became disabled on or before that date. (Dec. 1; Tr. 72).

The plaintiff's application was denied initially in March 2011, and upon reconsideration in May 2011. (Tr. 67-68, 91-93, 98-100). Peltonovich subsequently requested a hearing before an ALJ. (Tr. 89-90). The request was granted and a hearing took place on April 10, 2012 in Lawrence, Massachusetts. (Tr. 8-45, 101-02). Peltonovich, who was represented by counsel, appeared and testified at the hearing. (Tr. 8, 14-37). Additionally, the ALJ elicited testimony from a vocational expert ("VE"), who described the plaintiff's vocational background based on her past work experience, and responded to hypothetical questions designed to determine whether jobs exist in the regional or national economies for an individual with the same age, educational background, past work experience, and RFC as the plaintiff. (Tr. 37-44).

On April 19, 2012, the ALJ issued a decision denying Peltonovich's application for benefits. (Dec. 10; Tr. 81). The plaintiff then filed a request for review of the ALJ's decision by the Social Security Appeals Council, and on March 28, 2013, the Appeals Council denied the request, thereby making the ALJ's decision the final decision of the

Commissioner for purposes of review. (Tr. 1-3, 6-7). Accordingly, the plaintiff has exhausted all of her administrative remedies, and the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## The ALJ's Decision

As described above, in order to qualify for SSDI benefits, Peltonovich had to establish that she was disabled on or before March 31, 2008, the last date when she was insured. The ALJ concluded that from May 30, 2002 through March 31, 2008, the plaintiff "was not under a disability within the meaning of the Social Security Act[,]" which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1; Tr. 72). There is no dispute that the ALJ, in reaching her decision that Peltonovich was not disabled, applied the five-step sequential evaluation required by 20 C.F.R. § 404.1520. The procedure resulted in the following analysis, which is detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-9; Tr. 74-80).

The first inquiry in the five-step process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id. In the instant case, the ALJ determined that Peltonovich did not engage in substantial gainful work activity from May 30, 2002, the alleged onset date of

her disability, through her last insured date of March 31, 2008. (Dec. Finding #2; Tr. 74). Therefore, the ALJ proceeded to the next step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is considered not disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5. Here, the ALJ concluded that during the relevant time period, Peltonovich suffered from several severe impairments, including bilateral carpal tunnel syndrome, bilateral ulnar tunnel syndrome, and bilateral elbow tendonitis. (Dec. Finding #3; Tr. 74). Accordingly, her analysis continued.

The third inquiry in the sequential analysis is whether the claimant has an impairment equivalent to any of the specifically listed impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled. See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(d). At this step, the ALJ concluded that Peltonovich's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments. (Dec. Finding #4; Tr. 76). Thus, she proceeded to step 4 in the evaluation process.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5; see also 20 C.F.R. § 404.1520(e). Accordingly, it is at this stage of the analysis that the ALJ

must determine the claimant's RFC. In the instant case, the ALJ found, "[a]fter careful consideration of the entire record," as follows:

> through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[2] except that the claimant can only occasionally climb ladders, ropes, scaffolds, ramps, or stairs. The claimant also [can] only occasionally balance, stoop, crouch, kneel, and crawl. Lastly, the claimant is limited to only occasional overhead reaching bilaterally.

(Dec. Finding #5; Tr. 76). Peltonovich contends that the ALJ's determination of her RFC was not based on substantial evidence because the ALJ improperly adopted Dr. Jao's assessment as to the severity of her physical limitations rather than the opinions of her treating physicians. As described below, this court disagrees, and finds that the ALJ's decision was proper.

In reaching her conclusion regarding Peltonovich's RFC, the ALJ followed well-established procedures. Thus, the ALJ first considered the plaintiff's testimony regarding her pain and other symptoms, and the extent to which the alleged symptoms were consistent with the objective medical evidence and other evidence in the record. (Dec. 5-6; Tr. 76-77). Because the ALJ determined that Peltonovich's medically determinable

---

[2] 20 C.F.R. § 404.1567(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

impairments could reasonably be expected to cause the plaintiff's alleged symptoms, she went on to determine whether the plaintiff's subjective complaints were credible in light of the entire record. (Dec. 6-8; Tr. 77-79). The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Dec. 6; Tr. 77).

In evaluating Peltonovich's credibility, the ALJ first reviewed the plaintiff's medical records, and concluded that they supported an ability to perform a limited range of light work consistent with her finding regarding the plaintiff's RFC. (Id.). For example, the ALJ determined that the medical evidence established a history of carpal tunnel syndrome, for which Peltonovich underwent surgery in 1991. (Id.). The ALJ acknowledged that the surgery had proved unsuccessful. (Id.). Nevertheless, she found it significant that the plaintiff had been able to return to work and remain at her job, albeit with some restrictions, for more than ten years following the surgery. (Id.). The ALJ also found that the medical records from 2002 through 2008, which covered the alleged period of disability, did not support the plaintiff's claims of disabling pain and other symptoms in her upper extremities. (See Dec. 6-7; Tr. 77-78). Although the ALJ recognized that those records documented consistent complaints of pain, as well as occasional complaints of soreness in Peltonovich's forearms and occasional parasthesias and weakness in her wrists and elbows, the ALJ found that the objective evaluations revealed only minimal findings. (Dec. 6; Tr. 77). For example, but without limitation,

the ALJ noted that physical examinations of Peltonovich's upper extremities revealed normal strength, normal sensitivity, and no signs of instability throughout the relevant time period. (Id.). She further noted that results from a May 2002 nerve conduction and EMG study showed only mild median neuropathies in Peltonovich's wrists, and mild ulnar neuropathy in her elbow. (Dec. 7; Tr. 78). Moreover, the ALJ found, based on her review of the records, that the plaintiff's pain did not stop her from using her hands, and that Peltonovich often had periods of improvement in her physical condition. (Dec. 6; Tr. 77). Accordingly, the ALJ concluded that the medical evidence from the time period under review was consistent with her assessment of the plaintiff's RFC. (Dec. 7; Tr. 78).

Notwithstanding the fact that Peltonovich was last insured on March 31, 2008, and had to demonstrate that she was disabled on or before that date, the ALJ reviewed the subsequent medical evidence and found that "even the evidence after 2008 d[id] not reveal any significant limitations." (Dec. 7; Tr. 78). Specifically, the ALJ found that while the plaintiff continued to complain of pain, occasional tingling, and weakness in her upper extremities throughout 2009 and 2010, her physical examinations from that time period detected no signs of weakness, atrophy, sensory deficits or tenderness, and revealed only a mild positive Tinel sign. (Id.). The ALJ further noted that Peltonovich reported improvement in her arm condition, which she described as "not bad" in December 2009, and that she exhibited a full range of motion, with no tenderness in her elbows and wrists, upon examination in 2010. (Id.).

Following her review of the plaintiff's medical records, the ALJ considered Peltonovich's testimony regarding the impact of her impairments on her activities of daily living. (Dec. 7-8; Tr. 78-79). The ALJ recognized that the plaintiff's "reported activities of daily living appear particularly limiting." (Dec. 8; Tr. 79). However, she determined that there was little evidence in the medical records to support Peltonovich's testimony. (Id.). The ALJ also noted that during the hearing, Peltonovich "consistently gestured with her hands, moved her arms freely, and opened the hearing room door to leave without any apparent signs of hesitation." (Id.). Accordingly, she found that Peltonovich's actions at the hearing were inconsistent with her allegations of disabling impairments in her upper extremities. (Id.).

Finally, the ALJ considered the opinion evidence from Peltonovich's treating physicians and Dr. Jao, the reviewing State agency physician. (Dec. 7-8; Tr. 78-79). As the ALJ explained with respect to the plaintiff's treating sources:

> In 2011, the claimant's treating physicians, Dr. Jesse Jupiter and Dr. Christopher Herron, submitted letters describing the claimant's condition (15F, 17F). Both doctors described progressive problems in the claimant's upper extremities, including difficulties with daily tasks and ongoing pain and weakness (Id.). In particular, both doctors noted that the claimant was able to move her upper extremities, but had almost no measurable pinch or grip strength (Id). Although this sounds particularly limiting, there is no support for this statement in the record. Dr. Jupiter and Dr. Herron both opined that the claimant was disabled and unable to engage in substantial gainful employment. The undersigned notes that such a decision is an issue reserved for the Commissioner. Additionally, the opinions of both doctors are inconsistent with the record and poorly supported by the objective medical evidence. Accordingly, the undersigned affords the opinions of Dr. Jupiter and Dr. Herron little weight.

(Dec. 7; Tr. 78).  In contrast, the ALJ stated that she had given "substantial weight" to Dr.

Jao's assessment that Peltonovich retained the physical capacity for light work, but that

she could only occasionally climb, balance, stoop, kneel, crouch, crawl, and reach

overhead bilaterally.  (Dec. 8; Tr. 79).  The ALJ explained that "Dr. Jao is familiar with

the regulations and standards for disability determination[,]"  and that "[h]is opinion is

consistent with the record and well supported by the weight of the objective medical

evidence."  (Id.).  Accordingly, she adopted his opinion and rejected the opinions of

Peltonovich's treating physicians.  For the reasons detailed below, this court finds that

her decision to do so did not amount to reversible error, and does not warrant a remand to

the Social Security Administration.

After explaining the basis for her RFC determination, the ALJ concluded that the

plaintiff was unable to perform her past relevant work as an electronics assembler and a

cashier.  (Id.).  Consequently, she reached the fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work

experience and age, the claimant is capable of performing other work.  See Seavey, 276

F.3d at 5; 20 C.F.R. § 404.1520(g).  If so, the claimant is not disabled.  See 20 C.F.R.

§ 404.1520(g).  At step five, the Commissioner has the burden "of coming forward with

evidence of specific jobs in the national economy that the applicant can still perform."

Seavey, 276 F.3d at 5.  In the instant case, the ALJ relied on the testimony of the VE to

conclude that "through the date last insured, . . . the claimant was capable of making a

successful adjustment to other work that existed in significant numbers in the national

economy." (Dec. 9; Tr. 80). Therefore, the ALJ found that Peltonovich was not disabled. (Id.).

Additional factual details relevant to this court's analysis are described below where appropriate.

## III. ANALYSIS

### A. Standard of Review

Peltonovich is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act"). The Act provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a re-hearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added). The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Thus,

"the court's function is a narrow one limited to determining whether there is substantial

evidence to support the [Commissioner's] findings and whether the decision conformed

to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315,

319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record

arguably could justify a different conclusion, so long as it is supported by substantial

evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.

1987).

"Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts[.]'" Musto v. Halter, 135 F.

Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.

1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual

error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

## B. Plaintiff's Challenge to the ALJ's Decision

The plaintiff argues that the Commissioner's decision was not based on substantial evidence because the ALJ improperly credited Dr. Jao's opinion over the opinions of Dr. Jupiter and Dr. Herron. (Pl. Mem. (Docket No. 14) at 10-12). Specifically, the plaintiff asserts that Dr. Jao "w[as] not medically qualified to render an opinion sufficient to disqualify the opinion of a treating physician" because he specializes in special senses rather than in orthopedics. (Id. at 10). She further argues that the ALJ was not entitled to rely on Dr. Jao's assessment because it was based upon a partial review of the administrative record, which did not include a substantial portion of the available medical evidence. (Id. at 12). For the reasons that follow, this court finds that the ALJ's treatment of the opinion evidence was proper and does not support a ruling in the plaintiff's favor.

## The ALJ's Rejection of the Treating Physicians' Opinions

As the ALJ indicated in her decision, both the plaintiff's hand surgeon, Dr. Jupiter, and her primary care physician, Dr. Herron, expressed opinions regarding the severity and limiting effects of Peltonovich's upper extremity impairments. Specifically, the record shows that in January 2011, Dr. Jupiter completed a questionnaire in which he indicated that Peltonovich was suffering from bilateral upper extremity fatigue and pain,

and opined that she was unable to lift more than five pounds or engage in repetitive activities. (Tr. 311). It also shows that on May 23, 2011, Dr. Jupiter wrote a letter to the plaintiff's attorney in which he described the plaintiff's complaints about "increasing problems in her upper extremities[,]" including Peltonovich's view that her impairments precluded her from performing work or any other activities involving the use of her upper extremities. (Tr. 365). Significantly, in his letter, Dr. Jupiter also described his own treatment of the plaintiff's carpal tunnel syndrome as follows:

> [Peltonovich] initially came under my care in 1991. She had electrophysiologic testing which revealed a moderate carpal tunnel compression on the right side and mild on the left. Surgery was performed September 1991 with carpal tunnel release on the right. Though specific symptoms [are] no longer present, she has had [a] continuum of upper extremity complaints. She is followed for irritable bowel syndrome, fainting and stress. Objectively ... she is able to move her upper extremities but has almost no measurable pinch or grip strength.

(Id.). Dr. Jupiter further opined, in an addendum to his letter, that "Janet Peltonovich has been disabled form [sic] any and all substantial gainful employment as of April 2008." (Tr. 365-66). As described above, the ALJ expressly considered Dr. Jupiter's opinions, including his remarks about the plaintiff's limited pinch and grip strength, but determined that Dr. Jupiter's opinions were entitled to "little weight." (See Dec. 7; Tr. 78).

The record also contains a letter from Dr. Herron to Peltonovich's counsel in which the plaintiff's primary care physician discussed the history of the plaintiff's upper extremity impairments and opined that they precluded her from working. In his letter, which is dated October 20, 2011, Dr. Herron wrote that Peltonovich had been a patient in

his practice for many years, and that "[s]he has had progressive difficulties with her upper extremities to the point where she cannot work because of these problems." (Tr. 370). He also discussed her history of carpal tunnel surgery, the difficulties she experienced while working, and her unsuccessful efforts to maintain employment as a cashier. (Id.). Furthermore, Dr. Herron expressed the following opinion regarding the limiting effects of Peltonovich's upper extremity impairments:

> Because she has been unable to perform any significant activity with her arms/hands, including typing, holding a telephone, writing, lifting, fine manipulation, repetitive motions with hands/wrists/arms, etc., and the fact that she has no measurable grip or pinch strength, she has been unable to perform most activities with her upper extremities without help, including activities of daily living, household chores, etc. Mrs. Peltonovich has been disabled from any and all substantial gainful employment since 1996.

(Id.). Again, the ALJ considered Dr. Herron's comments, but determined that his opinions were entitled to "little weight." (See Dec. 7; Tr. 78).

This court finds that the ALJ committed no error by assigning little weight to the treating physicians' opinions. "The law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians." Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)). Pursuant to the Social Security regulations, "'[c]ontrolling weight' is typically afforded a treating physician's opinion on the nature and severity of an impairment where it . . . 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence' in the claimant's case." Id. (quoting 20 C.F.R. §§ 404.1527(d)(2) and

416.927(d)(2)). However, the ALJ is entitled to "downplay the weight afforded a treating

physician's assessment of the nature and severity of an impairment where . . . it is

internally inconsistent or inconsistent with other evidence in the record including

treatment notes and evaluations by examining and nonexamining physicians." Id.

"Inconsistencies between a treating physician's opinion and other evidence in the record

are for the ALJ to resolve." Lee v. Astrue, Civil Action No. 10-10708-DJC, 2011 WL

2748463, at *11 (D. Mass. July 14, 2011) (slip op.).

   Here, the ALJ found, and the record shows, that there was no support for the

doctors' assertions that Peltonovich had no measurable pinch or grip strength, and that

she could not perform any significant activity with her arms or hands, during the relevant

time period. (See Dec. 7; Tr. 78). As the ALJ noted in her decision, objective findings

from a nerve conduction and EMG study that was performed in May 2002 revealed only

mild median neuropathies in the plaintiff's wrists and mild ulnar neuropathy in her

elbow. (Id.; see also Tr. 274-75). The record also confirms the ALJ's finding that there

were frequent reports of improvement in Peltonovich's upper extremities, and that she did

not allow her symptoms to stop her from using her hands. (See, e.g.. Tr. 264, 280, 284-

85, 307, 337). Additionally, physical examinations that were conducted during the

relevant time period revealed normal strength and sensitivity in the plaintiff's upper

extremities, and detected no signs of instability in Peltonovich's wrists. (See Tr. 286,

302, 306-07). In fact, during the course of an examination in December 2004, Dr. Jupiter

determined that Peltonovich had intact thenar strength and a full range of motion in her upper extremities, as well as measurable grip and pinch strength in both of her hands. (Tr. 307). When Dr. Jupiter next examined the plaintiff in April 2007, he found that she was "slightly tender directly over the olecranon tip" of her elbow, but that she retained "normal muscle strength [and] [n]ormal sensibility." (Tr. 306). Thus, Dr. Jupiter's statements regarding the severity of Peltonovich's impairments are directly contradicted by the results of his own examinations. The plaintiff has not pointed to any medical evidence that would undermine Dr. Jupiter's findings or the other evidence that was relied on by the ALJ. Therefore, the ALJ was justified in her decision to reject the treating physicians' opinions as to the severity and limiting effects of Peltonovich's impairments.

This court also finds that the ALJ was entitled to reject the treating physicians' opinions that Peltonovich was disabled and incapable of working. As an initial matter, Dr. Herron's opinion that "Peltonovich has been disabled from any and all substantial gainful employment since 1996" is entirely undermined by the undisputed fact that the plaintiff remained employed full time at Lucent until May 2002. (Tr. 370, 18-19). Moreover, "the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts." Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (quoting Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st cir. 1981)). Consequently, opinions of examining sources on such matters "are not given special significance by mere virtue of the existence of a treating

relationship." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010). As described above, "the hearing officer is only required to make a decision that is supported by substantial evidence." Monroe, 471 F. Supp. 2d at 211. Where, as here, the ALJ determines that the treating physicians' opinions are not corroborated by the objective findings and other medical evidence in the record, the ALJ it not obligated to rely on them or afford them controlling weight. See Morales v. Comm'r of Soc. Sec., 2 Fed. Appx. 34, 36 (1st Cir. 2001) (per curiam) (rejecting claimant's argument that ALJ was required to give controlling weight to opinions of claimant's treating physicians where such opinions "were not corroborated by clinical studies or findings and were refuted by the rest of the record evidence").

## The ALJ's Reliance on Dr. Jao's Opinion

Peltonovich nevertheless contends that the ALJ was not entitled to rely on Dr. Jao's opinion because "Dr. Jao was opining outside his expertise and . . . upon a review of a partial Administrative Record" when he determined that the plaintiff could perform a limited range of light work. (Pl. Mem. at 11). This court finds that there was no error in the ALJ's decision to give substantial weight to Dr. Jao's assessment of Peltonovich's RFC.

The record shows that on March 8, 2011, Dr. Jao completed a physical RFC assessment based on his review of the available medical records. (Tr. 316-23). Therein, Dr. Jao determined that Peltonovich could perform the requirements of light work, except that she could only occasionally climb, balance, stoop, kneel, crouch and crawl, and

could only occasionally reach overhead bilaterally. (Tr. 318-19). The ALJ found that Dr.

Jao was "familiar with the regulations and standards for disability determination[,]" and

that his opinion was "consistent with the record and well supported by the weight of the

objective medical evidence." (Dec. 8; Tr. 79). Accordingly, she gave his opinion

"substantial weight," and adopted his assessment of Peltonovich's RFC. (Id.; see also

Dec. Finding #5, Tr. 76).

The record also shows that Dr. Jao's opinion was affirmed by a second State

agency physician. On May 10, 2011, Theresa Kriston, M.D. reviewed the available

medical records and completed a Case Analysis form in which she stated that Dr. Jao's

March 8, 2011 physical RFC assessment "is affirmed as written." (Tr. 330). Although

the ALJ made no specific reference to Dr. Kriston's opinion in her written decision, the

plaintiff contends that Dr. Kriston, like Dr. Jao, lacked the expertise necessary to render a

reliable opinion regarding her RFC. (Pl. Mem. at 12). She also argues that Dr. Kriston's

opinion could not support the ALJ's decision because Dr. Kriston, like Dr. Jao, based her

assessment on a partial review of the administrative record. (Id.). Again, this court finds

that the plaintiff's arguments are unpersuasive.

Peltonovich contends that the State agency physicians were not qualified to assess

her RFC because her impairments affected her upper extremities, and the State agency

physicians lacked expertise in the relevant field of orthopedics. (See id. at 11-12). Thus,

according to the plaintiff, "[t]he Social Security Administration is not exempt from the

Supreme Court's finding in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,

[113 S. Ct. 2786, 125 L. Ed. 2d 469] (1993)." (Id. at 12). She further argues that "[n]o court would qualify a medical doctor as an expert in all medical areas outside of their acknowledged expertise[.]" (Id.). There is no dispute that Dr. Jao's area of medical specialization is "special senses," which relates to vision, hearing and balance.[3] (See id. at 11-12; Def. Mem. (Docket No. 24) at 12). The record also indicates that Dr. Kriston specializes in the field of preventative medicine.[4] (See Tr. 330; POMS DI 26510.090). Nevertheless, the plaintiff's assertion that their lack of expertise in orthopedics rendered the ALJ's reliance on their opinions improper is belied by the applicable authority.

As an initial matter, there is no merit to Peltonovich's suggestion that Daubert applies to claims for Social Security benefits. In that case, the Supreme Court established standards for the admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence. See Daubert, 509 U.S. at 588-97, 113 S. Ct. at 2794-99. "The Federal Rules of Evidence do not apply to the admission of evidence in Social Security administrative proceedings." Bayliss v. Barnhart, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005). Therefore, Daubert has no applicability to the instant case. See id. ("The requirements established in

---

[3] As the plaintiff explains in her memorandum in support of her motion to reverse, Dr. Jao's medical expertise can be determined by a code that appears next to the signature on his physical RFC assessment. (Pl. Mem. at 11-12). According to the Social Security Administration's Procedural Operations Manual ("POMS"), Dr. Jao's medical specialty code, "D044," indicates that he specializes in the area of "special senses." See POMS DI 26510.090.

[4] Peltonovich claims that Dr. Kriston's area of specialization is pediatrics. (Pl. Mem. at 12). However, the record shows that Dr. Kriston's medical speciality code is "D036." (Tr. 330). According to the POMS, that code indicates a specialty in preventative medicine. See POMS DI 26510.090.

. . . *Daubert* . . . do not govern the admissibility of evidence before the ALJ"); Gillespie v. Astrue, Civil Action No. 1:13-CV-00219, 2014 WL 1168872, at *9 (W.D. La. Mar. 21, 2014) (slip op.) (explaining that "ALJs who conduct SSA hearings have no *Daubert* gate-keeping duty").

Moreover, under the Social Security Act, "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims." Babcock v. Barnhart, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) (quotations and citations omitted). See also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical . . . consultants and other program physicians . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Accordingly, "[i]t is well settled that an ALJ is entitled to rely upon the[ir] opinions" in evaluating a claim of disability. Colvin v. Astrue, No. 09-CV-946S, 2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011) (unpub. op.). In fact, because State agency medical consultants are considered experts in the evaluation of disability claims, the Social Security regulations "*require* administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impair-ment(s) as opinions of nonexamining physicians[.]" Social Security Ruling ("SSR") 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996) (emphasis added). See also 20 C.F.R. § 404.1527(e)(2)(i) (explaining that ALJs "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians . . . as opinion evidence"). This includes State agency physicians' assessments regarding a claimant's RFC. SSR 96-6P, 1996 WL 374180, at *4.

To the extent the plaintiff suggests that the opinion of a State agency consultant cannot outweigh the opinion of a treating physician, this argument too lacks merit. "The hearing officer's choice to accept a non-treating, non-examining physician's assessment is completely permissible within the regulations 'provided there is support for the result in the record.'" Monroe, 471 F. Supp. 2d at 212-13 (quoting Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994)). Furthermore, the ALJ is entitled to adopt the state agency physician's opinion, even if it conflicts with the opinions of the claimant's treating physicians. See id. (finding that ALJ's decision to adopt consulting physicians' opinions over the conclusions of claimant's treating physician was supported by substantial evidence). This is not to say, however, that the State agency consultant's area of expertise is irrelevant to the ALJ's analysis. When an ALJ considers the findings of a non-treating, non-examining physician, the ALJ must consider a variety of factors, including "the consultant's medical specialty and expertise in [the Social Security] rules, the supporting evidence in the case record, supporting explanations the medical . . . consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii). In this case, the ALJ specifically found that "Dr. Jao is familiar with the regulations and standards for disability determination." (Dec. 8; Tr. 79). She also determined, following a detailed review of the plaintiff's medical history, that Dr. Jao's "opinion is consistent with the record and well supported by the weight of the objective medical evidence." (Id.). Thus, there was no error in her decision to credit Dr. Jao's opinion.

This court's conclusion that it was appropriate for the ALJ to rely on Dr. Jao's opinion is not altered by Peltonovich's argument that the State agency physicians had no opportunity to review pages 334 through 454 of the administrative record. (See Pl. Mem. at 12). Among the factors that an ALJ should consider when weighing an assessment by a non-treating physician "is 'the availability of most of the medical evidence to the non-examining physician.'" Chelte v. Apfel, 76 F. Supp. 2d 104, 108 (D. Mass. 1999) (quoting DiVirgilio v. Apfel, 21 F. Supp. 2d 76, 81 (D. Mass. 1998)). Here, however, the vast majority of the medical records that were unavailable for review by the State agency physicians reflect treatment that took place well after Peltonovich's date last insured and/or are unrelated to the plaintiff's upper extremity impairments. (See Tr. 334-36, 339-51, 363-64, 372-454). In addition, a number of the remaining records are copies of documents that were included among the documents that were reviewed by Drs. Jao and Kriston. (Compare Tr. 352-55, 358-61 with Tr. 283-86, 299, 304-06). The record thus indicates that the State agency physicians were able to consider most if not all of the medical records that are relevant to Peltonovich's claim of disability during the time period from May 30, 2002 through March 31, 2008. Compare Chelte, 76 F. Supp. 2d at 108 (finding that ALJ's reliance on non-treating physician review of a partial record was not supported by substantial evidence because the non-treating physicians "never [saw] vital information contained in the unreviewed portion" of the record). In any event, Peltonovich has not identified any medical evidence from the unreviewed portion of the record that would support her claim of disabling impairments on or before March 31,

2008.  Therefore, this court concludes that the ALJ's decision was based on substantial evidence, and that the Commissioner's decision to deny benefits must be upheld.

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, the plaintiff's "Motion to Reverse the Decision of the Commissioner of Social Security" (Docket No. 13) is DENIED and the "Defendant's Motion for Order Affirming the Decision of the Commissioner" (Docket No. 23) is ALLOWED.